## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **EMILY HALL BLODGETT,** | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | |
| **UNITED STATES OF AMERICA,** | **Case No. 2:06-CV-00565DAK** |
| **Defendant.** | **Judge Dale A. Kimball** |

There are two matters before this court.  The first matter is Plaintiff Emily Hall

Blodgett's Motion to Strike Defendant United States of America's affirmative defense number

four.  The second matter is Defendant's Motion in Limine to exclude from trial the testimony of

Blodgett's treating physicians and medical providers regarding causation.[1]  The court held a

hearing on the two motions on April 28, 2008.  At the hearing, Daniel F. Bertch represented

Blodgett and Amy J. Oliver and Jeff Nelson represented Defendant.  Following the hearing, the

court took the matter under advisement.  Now, having carefully considered the memoranda and

additional materials submitted by the parties, as well as the relevant law and facts relating to the

---

[1] Defendant also brings a separate motion in limine to exclude all expert testimony.  This motion is substantively similar to the more specific motion to exclude the trial testimony of Blodgett's treating physicians and medical providers regarding causation.  In submitting only one opposition memorandum, Blodgett assumably recognized these similarities and chose to collectively address the two motions in limine.  The court does the same.

motions, the court renders the following Memorandum Decision and Order.

## BACKGROUND

On October 23, 2002, a United States Postal Service (USPS) vehicle collided with Blodgett's vehicle on Redwood Road in South Jordan, Utah.  Blodgett suffered injuries as a result of the collision.

On August 30, 2004, Blodgett mailed an administrative claim (Initial Claim) to the USPS pursuant to the Federal Tort Claims Act (FTCA), alleging that she suffered neck and back injuries as a result of the collision and seeking a total of $23,500 in total damages.  *See* 28 U.S.C. § 2675(a).  Three months later, in December 2004, Blodgett underwent back surgery.

On July 15, 2005, the USPS issued a written decision denying Blodgett's Initial Claim. On December 20, 2005, Blodgett filed a request for reconsideration of the Initial Claim.  On March 3, 2006, Blodgett sought to amend the Initial Claim, then under reconsideration (Amended Claim).  In her Amended Claim, Blodgett alleged neck and back injuries, but asserted an increased damages claim of $255,000.  USPS issued a second written denial on March 30, 2006.

On July 20, 2006, Blodgett filed suit in federal court, seeking a total of $255,000 in damages.  In its Answer, Defendant averred as a fourth affirmative defense that Blodgett's damages, if any, are limited to the amount asserted in the Initial Claim because Blodgett filed the Amended Claim after the USPS denied the Initial Claim.

The court's Scheduling Order designated June 11, 2007, as the deadline for Blodgett to identify testifying experts and the subject of their testimony.  The Scheduling Order noted that Blodgett's expert disclosures should occur by the June 11, 2007 deadline even if the testifying

2

expert was not someone from whom a report was required.[2]  Blodgett did not identify any

experts by the June 11 deadline.  In its Scheduling Order, the court also designated August 9,

2007, as the deadline for Blodgett to file expert reports.  On August 9, 2007, Blodgett filed a

Designation of Expert Witnesses, in which she identified eleven witnesses, the majority of whom

are treating physicians or medical providers, as mixed fact and expert witnesses.  In her

Designation of Expert Witnesses, Blodgett stated that to the extent any designated witnesses are

mixed fact and expert witnesses "each medical provider is anticipated to testify not only with

regard to their medical care and the facts ancillary thereto, but also to the necessarily 'expert'

opinions, which are created from that treatment."  Regarding Dr. Kade Huntsman, the orthopedic

surgeon who treated Blodgett, the Designation of Expert Witnesses states that "[i]t is anticipated

that he will testify in accordance with his deposition testimony, which is incorporated by

reference as a report of the same."

    A bench trial is set to begin in the case on May 12, 2008.  Defendant admits negligence

on the part of the postal carrier but disputes the amount of damages, if any, sustained by

Blodgett.

## DISCUSSION

### I. Motion to Strike

    Blodgett moves to strike Defendant's affirmative defense number four, in which

Defendant maintains that Blodgett's damages are limited to the $23,500 asserted in her Initial

Claim.  Blodgett asks the court to strike the affirmative defense and allow Blodgett to assert a

_____

[2]  The Scheduling Order stated that expert identification "shall be made even if the
testifying expert is an employee from whom a report is not required."

$250,000 damages claim because Blodgett timely filed her Amended Claim to reflect the greater damages amount.  Blodgett further asserts that even if she did not timely file her Amended Claim, the court should nonetheless permit her to proceed with the $250,000 claim because Blodgett's back surgery after filing the Initial Claim constitutes an intervening fact or newly discovered evidence.

Blodgett first contends that she timely amended her Initial Claim to include the $250,000 damages claim.  Federal regulation 39 C.F.R. § 912.5 governs the amendment of claims under the FTCA against the USPS.  *See* 39 C.F.R. § 912.5.  Specifically, section 912.5(b) states that a properly presented claim

> may be amended by the claimant anytime prior to:
> (1) The claimant's exercise of the option to file a civil action pursuant to 28 U.S.C. 2675(a);
> (2) The Postal Service's issuance of a payment in the full amount of the claim; or
> (3) The Postal Service's issuance of a written denial of the claim in accordance with § 912.9.

*Id*.

Section 912.9, entitled "Final Denial of a Claim," states that

> Final denial of an administrative claim shall be in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail.  The notification of final denial may include a statement of the reasons for the denial and shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing the notation.

*Id*. § 912.9(a).  Section 912.9 also provides claimants with a procedure by which to request "reconsideration of a final denial of a claim under paragraph (a) of . . . section [912.9]."  *Id*. § 912.9(b).

Here, Blodgett filed her Initial Claim on August 30, 2004.  The USPS denied the Initial Claim on July 15, 2005, in writing via a letter sent by certified mail.  The letter states that the Initial Claim is "denied" due to an inability "to reach a mutually satisfactory resolution of th[e] matter in the administrative claim process."  The letter includes a statement informing Blodgett that she may file suit if dissatisfied with the USPS's "final denial" of the claim "no later than six(6) months from the date of the mailing of this letter," or, alternatively, Blodgett may file a request for reconsideration.  On December 20, 2005, Blodgett submitted a request for reconsideration.  On March 2, 2006, Blodgett submitted her Amended Claim.  Less than thirty days later, the USPS again denied Blodgett's claim.

Blodgett argues that her Amended Claim, with its increased damages amount, was timely because none of the events under section 912.5 had occurred at the time she submitted her Amended Claim.  In contrast, Defendant argues that the USPS's letter, dated July 15, 2005, constituted a written denial of claim in accordance with 912.9.

The court agrees with Defendant that the July 15, 2005 letter constitutes a final denial, as defined under section 912.9, of Blodgett's Initial Claim.  The USPS sent the letter by certified mail to Blodgett's attorney.  The letter explicitly states that the Initial Claim is denied, and the letter includes all requisite language under 912.9.  Accordingly, because Blodgett submitted her Amended Claim almost eight months after receiving the final denial of her Initial Claim, her amendment was, under the governing regulations, untimely.

Nonetheless, the court determines that Blodgett can still assert the $250,000 damages amount because the back surgery she underwent after filing the Initial Claim constitutes an intervening fact under 28 U.S.C. § 2675.  *See* 28 U.S.C. § 2675(b).  Under section 2675(b) of the

FTCA, a claimant may not assert a damages claim in excess of the amount requested from the administrative agency unless the increased damages amount is the result of "newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." *Id.* It is a claimant's "burden of proving that they are entitled to damages in excess of their administrative claim." *Spivey v. United States*, 912 F.2d 80, 85 (4th Cir. 1990).

As noted by the Sixth Circuit, early case law indicates that "[t]here is support for the legal position that an additional operation may be considered an intervening fact within the meaning of the statute." *Allgeier v. United States*, 909 F. 2d 869, 878 (6th Cir. 1990) (citing *Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975)). Although courts have subsequently interpreted the meaning of intervening fact as "be[ing] unexpected or unforeseen," *id.*, there is no evidence here to indicate that Blodgett knew surgery was a possibility, much less expected, at the time she filed her Initial Claim. Prior to filing her Initial Claim, Blodgett's medical treatment for her injuries was primarily chiropractic care, and in a physician visit just before filing her Initial Claim, Blodgett's nurse practitioner recommended Blodgett try physical therapy to alleviate her pain but gave no suggestion that her condition might not improve without surgery. *See United States v. Alexander*, 238 F.2d 314, 318 (5th Cir.1956) (allowing plaintiff to recover damages in excess of amount asserted in administrative claim because "the plaintiff did not know when his administrative claim was presented that his shoulder would not heal without surgery").[3]

---

[3] Despite Defendant's suggestion that Blodgett should have amended her claim during the seven-month period between surgery and the USPS's denial of her Initial Claim, the D.C. Circuit Court of Appeals notes that a claimant's failure to amend prior to denial does not inhibit

6

In short, the court concludes that although Blodgett's Amended Claim was untimely, she can still assert a damages claim in excess of the amount sought in her Initial Claim on grounds that the surgery she underwent after filing the Initial Claim constituted an intervening fact.  The court therefore grants Blodgett's Motion to Strike Defendant's affirmative defense number four.

## II.  **Motion in Limine**

Defendant moves to exclude the trial testimony of Blodgett's treating physicians and medical providers regarding causation.  Defendant argues that the court should preclude such testimony from trial because Blodgett failed to identify her treating physicians and medical providers, specifically Dr. Huntsman, as expert witnesses by the June 11, 2007 disclosure deadline designated in the court's Scheduling Order.

Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to "disclose . . . the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2)(A).  Under the rules, expert disclosures must be in writing, signed by counsel, and served on opposing counsel.  *See* Fed. R. Civ. P. 26(a)(4).  If the court instates a delivery deadline for expert disclosures, the rules impose stiff penalties for noncompliance—namely, failure to adhere with rule 26(a) disclosure requirements will prevent a party from using such evidence at trial unless the failed disclosure was harmless or substantially

---

the claimant from asserting the statutory exceptions under 28 U.S.C. § 2675.  *See Husovsky v. United States*, 590 F.2d 944, 954 (D.C. Cir. 1978) ("[T]he statutory exception to the ad damnum provision relates to facts in the interim between the filing, not the denial of the administrative claim and the institution of suit.").

justified.  *See* Fed. R. Civ. P. 37(c)(1).[4]  In exercising its "'broad discretion'" to determine

whether a rule 26 violation is justified or harmless, the court considers  "'(1) the prejudice or

surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the

prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the

moving party's bad faith or wilfulness.'"  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953

(10th Cir. 2002) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d

985, 993 (10th Cir.1999)).

     Here, Defendant argues that, although there are certain circumstances in which a treating

physician need not be disclosed as an expert, a treating physician who testifies beyond his or her

personal observations and diagnosis of the patient and opines as to the causation of injuries must

be identified in expert disclosures.  Because Blodgett failed to identify Dr. Huntsman by the

expert disclosure deadline, Defendant asserts that the doctor's trial testimony regarding

causation is barred.  Defendant further claims that the failure to disclose Dr. Huntsman as an

expert witness was neither harmless nor substantially justified.  Specifically, Defendant asserts

that it is prejudiced by Blodgett's failure to timely identify the physician because at the time

Defendant deposed Dr. Huntsman, Defendant did not know Blodgett intended to call him as an

expert witness. And had Defendant known that Dr. Huntsman might serve as an expert witness,

---

[4]    In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
    (B) may inform the jury of the party's failure; and
    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. 37(c)(1)(A)-(C).

and not just a lay witness, it would have questioned the doctor differently and challenged the doctor's qualifications.  Defendant also avers that there is no means this late in the proceedings—i.e., less than three weeks to trial— to cure the resulting prejudice.  Defendant argues that continuing the proceedings to allow it to depose Dr. Huntsman and to retain its own expert witness would actually further prejudice Defendant by resulting in additional delay and expense, expenses that Defendant itself would primarily incur.

In response, Blodgett first claims that because Dr. Huntsman was a treating physician and not a retained or specially employed expert, there was no requirement that she comply with rule 26 disclosure requirements.  Second, Blodgett contends that she did not violate the Scheduling Order because she disclosed Dr. Huntsman, and incorporated his deposition testimony as a report, by August 9, 2007—the deadline for expert reports.  Finally, Blodgett argues that expert disclosure was unnecessary because as a treating physician, Dr. Huntsman can testify as a lay witness on causation matters.

To begin, the court clarifies that under rule 26 a party must disclose *any* individual who plans to provide expert testimony, regardless of whether the individual is retained or specially employed.  *See* Fed. R. Civ. P. 26(a)(2)(A).  The distinction between expert witnesses and expert witnesses retained or specially employed is the written report requirement, not the disclosure requirement.  *See id*. 26(a)(2)(A)-(B).  As succinctly explained by the Seventh Circuit in *Musser v. Gentiva Health Servs.*, 356 F.3d 751 (7th Cir. 2004), "*all* witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under [r]ule 26(a)(2)(A); [but] only those witnesses *retained or specially employed to provide expert testimony* must submit an expert report complying with [r]ule 26(a)(2)(B)."  *Id*. at 756-57 (quotations omitted); *accord*

*Farris v. Intel Corp.*, 493 F. Supp. 2d 1174, 1179-80 (D. N.M. 2007); *Wirtz v. Kansas Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1211 (D. Kan. 2005); Fed. R. Civ. P. 26 cmt. 1993 Amends.  Accordingly, the court rejects Blodgett's contention that rule 26 did not require her to disclose Dr. Huntsman as an expert witness simply because he was a treating physician rather than a retained or specially employed expert.

Additionally, the court rejects Blodgett's contention that her naming Dr. Huntsman and incorporating his deposition as a report by the expert disclosure deadline satisfied the court's Scheduling Order.  Even if Dr. Huntsman constituted the type of expert witness required to submit a report, this requirement, as just discussed, did not alleviate Blodgett's obligation under the rules to identify him by the expert disclosure deadline.

As for Blodgett's assertion that Dr. Huntsman, as a treating physician, can testify as a lay witness regarding causation—thus assuaging any need for expert disclosure—the court disagrees.  Blodgett is correct that a treating physician who does not provide testimony under Federal Rules of Evidence 702, 703, and 705 can nonetheless testify as a lay witness.  *See Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party.").  But, importantly, under Federal Rule of Evidence 701, a lay witness may testify only as to opinions "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding . . . of a fact in issue"; a lay witness may not proffer opinion testimony "based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701.[5]

---

[5]  Notably, the Tenth Circuit decided *Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999), before the 2000 Amendment to Federal Rule of Evidence 701, clarifying that lay witnesses cannot provided opinions based on scientific, technical, or other specialized knowledge.  In

Accordingly, "[u]nder Tenth Circuit law, treating physicians not disclosed as experts are limited to testimony based on personal knowledge and may not testify beyond their treatment of a patient." *Witherspoon v. Navajo Refining Co.*, L.P., No. CIV 03-1160 BB/LAM, 2005 WL 5988650, at *2 (D. N.M. June 28, 2005); *see also Davoll*, 194 F.3d at 1138-39.  Dr. Huntsman's trial testimony as to causation is therefore properly excluded.  *See Witherspoon*, 2005 WL 5988650, at *2 (explaining that because plaintiffs did not disclose treating physician as an expert, the physician "may not provide testimony beyond what she perceived or did . . . [a]s such, any causation opinions drawn by [the doctor] . . . are excluded"); *see also Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F. Supp. 1566, 1573 (N.D. Ill. 1996) (same).

Finally, the court highlights that its exclusion determination is particularly appropriate where Blodgett offers no substantial justification for her failure to timely designate Dr. Huntsman as an expert witness.  Blodgett's erroneous assumption that because Dr. Huntsman was not a specially retained expert, he was not an expert whom she needed to disclose does not constitute a substantial justification.  As noted by the Seventh Circuit, "[a] misunderstanding of the law does not equate to a substantial justification for failing to comply with the disclosure deadline." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004).  Blodgett's additional assertion that Defendant should have inferred from the questions she asked during Dr.

---

*Witherspoon v. Navajo Refining Co.*, L.P., No. CIV 03-1160 BB/LAM, 2005 WL 5988650 (D. N.M. June 28, 2005), the district court, citing secondary support, explains that this "latter restriction was added by a 2000 amendment in order to prevent parties from smuggling in expert testimony under [r]ule 701 (lay witnesses), thus, evading the reliability analysis of *Daubert* and the disclosure requirements of [r]ule 26(a)(2)." *Id*. at *2.  "As a result, this amendment compels courts to categorize more testimony from treating physicians as subject to expert disclosure requirements and some courts have barred testimony from physicians about their diagnosis and treatment, finding that such opinions are necessarily based on expert knowledge." *Id*.

11

Huntsman's deposition that she intended to call the doctor as an expert witness at trial are likewise incorrect.  *See id.* at 759 (stating "that the defendant could have obtained the undisclosed information through its own efforts does not provide substantial justification").

The court also agrees with Defendant that Blodgett's failure to timely provide expert disclosures is prejudicial in that it denied Defendant an opportunity to question Dr. Huntsman in his expert capacity.  And the court concurs that such prejudice is not easily cured this late in the proceedings, and that staying the proceedings to allow Defendant to hold additional depositions and obtain its own expert would disrupt the scheduled trial date and arguably further prejudice Defendant.

In short, the court concludes that Blodgett's failure to timely disclose Dr. Huntsman as an expert witness prevents the introduction of the doctor's testimony of trial regarding causation. The court therefore grants Defendant's Motion in Limine.[6]

## CONCLUSION

Blodgett's Motion to Strike is GRANTED.  Defendant's Motions in Limine are GRANTED.

DATED this 1st day of May, 2008.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

---

[6] Consequently, as explained in footnote one of this Order, Defendant's Motion in Limine to exclude all expert testimony is likewise granted.

12